The Supreme Court has warned that courts must tread carefully when applying the judicial exceptions to Section 101, lest they swallow all of PAP law. This case raises that precise concern. The International Trade Commission found in U.S. Synthetic's claim to a polycrystalline diamond compact was ineligible for patent detection because it was directed to an abstract idea. However, the seminal Supreme Court decision in Diamond v. Chakrabarty bears directly on this issue. Under Chakrabarty, U.S. Synthetic's claim to the composition is patent eligible and the ITC must be reversed. Counsel, there's a two-part test under Supreme Court precedent. There's Alice Step 1 and Alice Step 2. What step do you think best applies to your case in explaining why you think that your claim is eligible? Your Honor, we think that the composition is eligible under both steps, but we think certainly so under Step 1 regarding what the composition is directed to. Now, under relevant law under Step 1 in Enfish, the Court must consider the character as a whole of the claimed invention. And here, the character as a whole of the claimed invention is a composition of matter. And that composition is defined in part by its constituent elements, including carbon, which is diamond, and cobalt. And it is also defined by the properties of the material as a whole. But you describe in your brief and describe in the specification that the invention here is using this 7.5% pressure level. It's not described as being the composition. What are we to make of that? Your Honor, it is true that the specification does describe the process of producing the ultimate composition. And that process is described as using 7.5%. And that's described as the invention, right? That is part of the invention, and it is one of the inventions. It's the process of making the composition. But the composition itself is also inventive. As Section 101 itself recognizes, inventors are able to claim their inventions as methods, processes, and also as compositions of matter. And that is the precise issue that Diamond v. Chakrabarty approached in its case. Mr. Cooley, is it your view that no composition of matter claim could ever be subject to the abstract idea exception? That is not our position, Your Honor. Our position is, if one looks at Chakrabarty, the issue of eligibility for a composition like ours is settled law. But Chakrabarty was more about whether a claim was to an ineligible product of nature. And it didn't really consider the question of abstract ideas. And that's what we have to deal with here. And so what I'm curious to learn is, what is the dividing line between a composition of matter claim that's ineligible as an abstract idea versus a proper composition of matter? Because I think we just agreed that a composition of matter claims are subject to the abstract idea exception. So what's the dividing line? How should we understand what's the framework we should use? So I would have two answers, Your Honor, to your question. And the first answer would be I do believe that Chakrabarty discusses all of the judicial exceptions, including abstract idea. It discusses in its later pages the application of fluke, indeed, which is the case that most people would put under the abstract idea framework, and notes that they had considered that issue there. And so I would say that Chakrabarty does consider all of the judicial exceptions and sets out the framework for analyzing compositions. But nonetheless, I would say that even if we were to step aside and look at other precedents, such as the Alice Mayo framework, which incorporates Chakrabarty as part of that, the invention is nonetheless eligible because it is of what it's directed to, and it's directed to the composition. And if you look at the claim elements, as we must under the proper test, you can see the interrelationship between them. So as I noted, you have the constituent elements. You also have the properties, which are related to each other as a whole. And one cannot simply divorce out one magnetic property and say, we'll analyze that in isolation. Well, I'm not sure that I understand your answer to Judge Chen's question. What is the dividing line in terms of a compositional matter claim between those that are abstract and those that aren't? What is the test? The test would be, well, let's look first, I think, at Chakrabarty talks about something that's markedly different characteristics and the potential for significant utility. That's markedly different characteristics compared to what exists in nature. Again, that was the product of nature analysis. We're dealing with a different exception to patent eligibility. That's the abstract idea exception. I know you want to talk about Chakrabarty, but what I'm really interested in understanding is thinking about this case more through the Alice Mayo framework and thinking about step one, step two, why is this claim not directed to an abstract idea when we've set up a framework for step one, where we've said to figure out whether a claim is directed to an abstract idea, we ask ourselves, what is the claimed advance recited in the claim over the prior art? Certainly. And here, again, the claimed advance over the prior art is that the properties, if we're referring to the facts of this case specifically, the properties of the material as a whole perform better than the prior art materials. And that is an undisputed fact in this case. Counsel, can I just ask you another question, which is the wearing clauses, they refer to wearing the unmatched portion of the polycrystalline diamond table exhibits a cursivity of a particular amount. That's one example. I think that the commission found that to be functional. Could you explain why that is not functional or whether it is functional language? It is not functional language, Your Honor. We would characterize that as definitional language. It's commonplace in the chemical and material arts to define a composition by not only what it is, but by the properties that it has. And we saw that the amicus pharma filed a brief speaking to exactly this point. And herein, the composition is defined not only by components which are in it, which are in the claim, but also by material properties that are inherent to that composition, including its coercivity, magnetic saturation, and specific permeability. And these are properties that one cannot merely, referring back to the question about Alice, one cannot merely divorce from the material like one would divorce a software from a computer. And so under that Alice-Mayo framework, those sorts of cases are not on point as to this sort of a scenario where you have constituent parts that are integrally and necessarily intertwined. And I would note that the constituents are not only related to the composition, but they're related to each other. As you look at coercivity, coercivity defines a relationship which relates to the mean-free path and the degree of diamond-to-diamond bonding, which is impacted by the diamond grain size. Diamond grain size and coercivity both claim Delaware. And is that in the claim itself? Excuse me, the relationship? It's not, right? It is not in the claim. Does it have to be? I do not believe so, Your Honor. What's in the claim is the definition of the material. The beneficial aspects or the objectives are not claimed, which is perfectly consistent with a case like Leroy v. Tatham. We did not come out and claim an original objective, an original motive, or something to that effect. We claimed the material itself according to its constituent parts and properties. How would someone be able to determine whether the polycrystalline table actually had that as we started doing the claim? How would someone determine if it had that? Well, one way to determine it would be to test it. In the specification, it outlines international standards that are recognized, ASTM standards, for measuring coercivity and magnetic saturation. And then a specific permeability is nearly the ratio of those two things. So would you have us say that any composition of matter claim that recites a property of any kind, any kind of range value for a property, is necessarily patent eligible and not an abstract idea? I don't know if the court need go that far, but what I would say... Like, for example, a composition of matter that cures dementia, period. Would that claim be directed to an abstract idea? I think that claim could be potentially directed to an abstract idea because it claims the objective of the thing. It does not definitionally claim what the thing is. So then, therefore, what you're trying to do is make a distinction between so-called functional claims and properties? I think that's... Functions of a composition versus properties of a composition? I think that's a fair distinction, Your Honor, and that would be very consistent with past precedents, including American Axel and others, where there were claims to functional things, functional objectives, Apple, VU, claiming the enhancing, as opposed to claiming the material and the properties thereof. But what if the property that's recited in the claim, and I'm not saying this is true for your magnetic saturation or coercivity limitations, but what if the limitation in the claim is so out of the ordinary? Like, you know, these diamond tables, they're of some level of hardness, I'm sure, and there's a measuring standard for the hardness of the diamond table, and there's some unit, and let's say normally diamond tables are 1,000 hardness units, but now you've claimed a diamond table that's 10,000 hardness units. A diamond table comprising all the conventional things that make up a diamond table, metal catalyst, et cetera, diamond-to-diamond bonding, wherein the hardness of the diamond table is 10,000 hardness units. Would that claim be patent eligible? Or would that be directed to just the idea of having a diamond table that has some super high hardness level? That's a close case, Your Honor, on the border of eligibility. Certainly, it would depend on what else was in the claim that was tethered to that. That's my claim, period. That's it. That's all that's in the claim. I think that would be, that's certainly not our case here. I'll note that, that we have a claim. Okay, so let's take for granted that's a tough issue, maybe tough issue for you. Why is your claim better than the claim I just came up with? The difference is that the hardness unit, as I understood you describing it, was more of a performance property, whereas here these are not performance properties. These are material properties. These are well-understood and recognized properties of materials, as Dr. German testified. They're inherent and intrinsic to the material. It's not, put another way, there's no evidence in this record that anyone was seeking to create a PDC with the material properties, that that was some objective or goal or original intent of anyone, whereas someone could say, oh, I want a PDC that's really hard or drills really well. I would have thought that part of your argument today would have been how the patent itself describes the relationship between these properties, like coercivity and magnetic saturation, and actual structural elements inside the diamond table. For example, mean free path, metal content. And so in that way, while just looking at the claim alone, it might look like you're just reciting properties or functions or however you want to call it, or results, but in fact these statements in the claim inform on structure. I would agree with that, Your Honor, of course. That is something we noted extensively in the briefing, that the properties are not merely just arbitrary properties of the material, but they go right to the heart of improving the performance capabilities by making better diamond-to-diamond bonding. But they don't just claim a better diamond-to-diamond bonding. They claim how that's achieved through the properties. And so for those reasons, Your Honor, we believe that this is a case that would be eligible under Step 1. I can see I'm into my rebuttal time, so unless there's further questions... We'll give you two minutes for rebuttal. Excuse me? We'll give you two minutes for rebuttal. Thank you. Ms. Chen. Thank you, Your Honor. May it please the Court. The Commission's decision here doesn't swallow all of patent law, nor does Chuck Ribardi decide the facts of this case. Affirming the Commission's decision does not require this Court to articulate some new Section 101 inquiry. The Commission faithfully applied long-standing Supreme Court and this Court's precedent that consistently and repeatedly apply the abstract idea exception to prohibit patenting a mere performance goal or some end result... But we've never did it in the context of a composition of matter claim, right? This case is breaking new territory. If we were to affirm, then this very crude tool of patentability, known as patent eligibility, would start running rampant through composition of matter claims just as it has through computer software and diagnostic claims. Is that true? I disagree, Your Honor, because the application of fact to law in a Section 101 context has always been a case-by-case judgment. And here, the Section 101 inquiry is aided by the factual findings made by the Commission below. Those factual findings include what the inventor characterizes as their contribution to the prior art, what the prior art was at the time of the invention, what the specification discloses regarding the properties, right? It also... Reading the patents in these 101 cases, I think we've always understood it to be a legal question. I mean, we have, in dozens of 101 cases now, read the patent to try to discern, you know, what is the meaning, whether this patent claim is directed to an abstract idea versus being an actual invention or possessing an invented concept. We've never said that that's a factual inquiry. We've always handled it, and we've handled it on Rule 12 motions. Certainly, Your Honor. Many of these cases on Section 101 have come up to this Court on appeal from a motion to dismiss or summary judgment. But that's not how the disposition of this case... I guess what I'm wondering is why can't we, the Court, read the patent, see that it plainly discusses relationships and correlations between certain properties like coercivity and magnetic saturation to structural elements of the plain diamond table, including the mean free path between diamond grains and the metal contact, the cobalt metal contact of the catalyst. And so why isn't that enough to understand, okay, this patent is informing skilled artisans that there is a relationship between these properties and their, you know, values and the things that are part of the diamond microstructure? Your Honor, I have two responses. First, that goes to the heart of the dispute between the parties below, in front of the ALJ and the Commission. What do these properties mean? Are they just desired goals and results? Or are they actually correlated in some way to a discrete and distinct PDC composition? How are they, and it's your view that they're goals, right? That's right. Why, could you explain why they're goals? I mean, when you look at them, there's a particular property, for example, coercivity of about 115, and the specification says how you measure that. So why is it a goal? They relate to a goal because the ALJ found that they're only loosely correlated to any physical characteristics. Now, when reading from the specification, it may seem... Can I ask you something? Why isn't itself a physical characteristic? It is a physical characteristic in the sense that these measured properties are measuring how a PDC structure behaves in a magnetic field. The PDC structure has a metal content. And so it's undisputed that inherently it's going to have a coercivity. It's going to have a magnetic saturation and a specific permeability. Dr. German, a U.S. synthetics expert, admitted that these characteristics are found in conventional PDCs. It's not something new that U.S. synthetic came up with. Correct, but I assume that there must be something about the range that is different than conventional. And they have claimed a particular range. It's not just saying any material that has a coercivity, right? It's a particular range. But the range, the specification does not go into that as part of the claim to advance. The range respondents expert, Dr. Schaefer, testified that it's just some imperfect proxy as to the amount of metal content that's in the composition. I guess my question is why does it need to be a perfect proxy? If there is some acknowledged relationship between these properties and something about the actual structure, tangible concrete structure, why isn't that good enough just for one-on-one purposes? I mean, there's other parts of patentability that we can look more deeply and more technically, like section 112, all of those different kinds of inquiries. But just for the opening threshold of section one-on-one, where we're trying to figure out whether this is just as a matter of law an effective claim for claiming an abstract idea, I don't know why we would need such exacting structure-property relationships as the Commission seems to want. Well, I think the section one-on-one inquiry addresses problems that are not addressed by other provisions in the Patent Act. And those concerns go to preemption. And here there is a preemption problem because as U.S. Synthetic's own test results show... Isn't there one of the... You say there's a preemption problem, but do I recall correctly that there was one party that infringed the claim or maybe somebody designed around the claim? Is that correct? I'm not sure if I can go into the details of that, but what I will say at a higher level is essentially the design around is to perform the conventional process and make conventional PDCs. And that cannot be addressing the preemption problem. It's that the way forward for future inventors is to simply perform what has been done in the past 50 years. So can I try to under... So the preemption, your perspective is that because the patent specification only discloses one method of making the composition of matter, that they shouldn't be able to claim the composition of matter. Is that your argument? No, no, Your Honor. I think the U.S. Synthetic's brief mischaracterizes what the commission's position below. Yes, it recognized that they claimed advance and what the inventor's contribution to the art was this recognition that you can use a higher syndrome pressure to make the PDC. But what they are claiming is supposedly their new PDC without actually defining what the concrete composition is. Instead, what they're claiming are these abstract results. Well, the concern I have is, and this was pointed out by your dissenting commissioner, that this kind of thinking is going to directly attack many, many, many composition plans that recite temperature values, pH levels, melting point ranges, all sorts of properties are decided with certain values or ranges. And now, under this type of thinking, you would have us say, well, those are just abstract ideas. Why? Because you haven't actually claimed the specific structural elements and the content of those structural elements. You're now claiming it by properties where there's actually maybe 40 different ways of different structures that can hit that melting point or hit that pH level. And you can't have claims like that. No, the commission's decision doesn't go that far. I see my time is up. No, keep going, please. I recognize that Judge Dai-Ping Chen tried to figure out what the line is for an abstract idea. And I think your question goes towards that. Not every property is the same, right? How do we know which is which? And I think that's based on some of these factual findings that the commission made. But here, the property is this desired goal result. There could be an incident where you could have a composition of matter claiming the property. Certainly, the commission's decision doesn't categorically exclude these type of claims. Where the claimed composition, for instance, the ALJ's final initial determination, gave an example where some magnetic coercivity result or some electrical conductivity actually went towards the design and had some beneficial characteristics. But here, what it is is some imperfect proxy to other beneficial characteristics like the amalgam-diamond bonding and the metal content. But that's not recited in the claims. Now, U.S. Synthetic below asserted claims, other dependent claims of the 502 patent and other patents in their patent portfolio that included the sintering pressure and or this metal content below 7.5%. After discovery, they voluntarily withdrew these claims because the accused PDCs all met these claimed results and yet they had varying compositions. The commission found that the respondents failed to prove that these claims lacked enamel. The commission found that they didn't make a discovery of enamel. We stand by that. That is right, Your Honor. Okay. Thank you, Ms. Chan. Mr. Angelus? Thank you, Your Honor. Good morning, Your Honor. May it please the Court, Theo Angelus, I'd like to make a few comments about Alice K. Nell Gates for the interveners. Just quickly on the 101 issues, there's some suggestion by U.S. Synthetic that it's never proper to have an underlying finding of fact in connection with Alice Step 1. And they cite the Atrix case, for example, but we think that Atrix actually supports the opposite proposition. What's the finding of fact here? The finding of fact is on page 26 of the appendix and it's that the magnetic side effects and the performance goals stated in Claim 15 are not structural and do not imply any particular microstructure. That is the finding of fact after the commission weighed, specifically weighed testimony, weighed exhibits, weighed a scholarly article, that all of those... This is all going to the notion that it's an imprecise proxy, an imperfect proxy, that there isn't some perfect correlation. And that goes to my next question, which is the question I asked the ITC, is why do you need perfect correlation? In other words, the demand on the commission side here to avoid an abstract idea problem is for any kind of property or function aside in a claim to have a perfect one-to-one correspondence to a very particularized species of a structural composition. And right now I don't have any idea why that would be necessary for the purposes of just the one-to-one threshold. What we have here is a finding of structural ambiguity and what the commission found as a matter of fact is that if you look at these journal articles, you look at these exhibits, you see not only is there not an imperfect proxy, there's no proxy at all. A loose and generalized relationship is no correlation at all. And what the commission found, looking very hard at the evidence and the exhibits, is that there is not a relationship between these magnetic side effects and this one performance measure. There's no relationship between that and any specific microstructure at all. I'm not seeing why that's a one-to-one issue. It seems to me that our one-to-one cases to the extent that they deal with composition of matter are dealing with two quite different situations. One in which what's claimed is purely conventional. That seems not to be the case here. And the other one is where the claim is to something which really hasn't been invented yet and there's no description of how to achieve the result. This doesn't seem to be either one of those two situations and I'm struggling to understand why this fits in with our one-to-one jurisprudence under those circumstances. So the way it does, Your Honor, is that when you look at what the claims are directed to, the commission needed to engage in fact-finding to determine what the claims are directed to. And what it found is that there are certain structural, conventional pieces of this claim. What the claim is actually directed to is these magnetic side effects and this performance measure. And it tells you how to get there. At least one method of getting there, right? And I will transition into 112 issues in a moment, Your Honor, as an alternative ground. But it does not tell you how to get there. There's nothing in the claim that recites how to yield that. What's recited, those side effects, do not get you there as the commission found as a matter of fact. There's too much structural ambiguity. The prior art satisfies these claim elements as the commission found on pages 30 to 33 of the appendix. And so that is a one-to-one issue. It's also a 112 issue. Counsel, just for a minute. So one thing. Didn't the commission find that these claims were not obvious? Isn't that true in view of the prior art? They were found to be not obvious and not anticipated by prior art, right? They were found... The grounds that were allowed to be asserted, there was not a finding of obviousness. That's correct, Your Honor. Of course, a court can never say a patent is valid, but they can say that the party hasn't proved that it's invalid. So that's what you're talking about. I've got several questions for you. I also want to ask you about the cases you're relying on for saying that step one of Alice, which is asking what is a claim directed to, whether that has underlying factual issues. I think you cited Atrix earlier. But Atrix is a step two case. And there, Atrix, the court said, there could be underlying fact questions. So respectfully, Your Honor, here's what Atrix says at 882 F. 3rd and 1127. These allegations suggest that the claimed invention is directed to an improvement in the computer technology itself. And so what claims are directed to is a step one analysis. Where does the court say there can be underlying factual issues under Alice step one? So that is the implication of this court's ruling that the district court did not properly credit the factual allegations that go to what the claims were directed to, which is a step one analysis. My recollection is that Atrix is a step two case on the factual issues. But in any event, I also was wondering when you were talking about the properties I guess in the wearing clause. Is that what you're talking about? That the coercivity, for example, in the wearing clause is not correlated, I guess you were saying? But what I was trying to understand is if it's something that is disclosed as being measurable, a measurable property of a material using a ATSM standard I believe is what's disclosed in this specification. How is that not a property, a measurable property of a material instead of being like a functional element of a claim? So our view, Your Honor, is that it's a result. So we call it functional or result. I think the courts have used both of those terms. By that meaning, isn't the length of my pencil a result? No, Your Honor. It's because there's no structural ambiguity in the length of your pencil. So you think there's structural ambiguity in the coercivity measure that is measured using an ATSM standard? Well, there's a coercivity measure, but we don't know what that says about the underlying structure. It's defining the meets and bounds of the composition of matter. So why do you need to know more than these are the meets and bounds of what I claim is my invention and this is a measurement that falls within the scope? Respectfully, Your Honor, it doesn't do that because what the Commission found is that it sweeps in, for example, the prior art, which is why there are also 112 issues here. It sweeps in things that don't have the properties that it is allegedly measuring, which is what the Commission found on pages 30 to 33. One concern I have here is how the Commission's enablement findings interact with its 101 analysis and what your position is. Let's assume for the moment we affirm on enablement. That is to say, there's substantial evidence to support the Commission's findings that you did not prove these claims fail for lack of enablement. The whole theory behind that argument was skilled artisans would have no idea how to make this kind of claim invention. They don't know how to do it. The claim doesn't recite how to do it. Obviously, the Commission said that doesn't matter because you didn't prove that skilled artisans actually would have that problem. Now we move over to the section 101 and we see why is it so mysterious all of a sudden for 101 purposes what these coercivity and magnetic saturation values entail because we already know through its enablement analysis that there are plenty of ways for skilled artisans to reasonably experiment to arrive at the diamond table with these types of coercivity and magnetic saturation values. Your Honor, my response to that is that this Court can affirm on the grounds of a lack of enablement for the full scope which is something the Commission did not raise. The leading part of my question is assume for the moment we affirm on enablement so you lose on enablement so now you're stuck with the Commission's analysis on enablement and how in fact they found skilled artisans would be able to make all different kinds of diamond tables that meet these particular property values. So what the Commission found is that a skilled artisan could make the particular embodiments in Table 1. It's a very different issue. Without that, they also found you didn't make your scope of enablement case either. I don't think they reached the question of enablement for the full scope under Amgen which hadn't been decided at the time. Let's assume now for the moment that the law didn't change when Amgen came out. That's right, Your Honor, it didn't because this goes back to the O'Reilly case it goes back to all these cases, the Holland Furniture case. This is a situation where the claims sweep in the prior art. That's undisputed. The Dragon 2 and the S18 are not made with the centering pressure above 7.5. That's your 112-103 argument. It is a 112 argument. It's an enablement for the full scope argument, Your Honor, because it goes exactly to this question of whether there are TDCs that are within the scope of the claim. I'm sorry, we're running out of time. Can you just get back to my concern about the 112 analysis that the Commission did which let's assume that we adopt and then how that interacts with why there's a 101 problem because now we know through the 112 analysis that there really isn't a how problem how to make these claim diamond tables that meet these particular property values. Respectfully, Your Honor, I disagree with that point. Then we can cut it off. I would say this. The claim can be both invalid under 112 and 101, which is what we have here. There are similar inquiries that happen under the 101 analysis about the how and the result and O'Reilly, I think, was a 112 case but is cited repeatedly by this Court in the context of 101 and that's why there's overlap there, Your Honor. I hope that answers your question. I'm happy to take another swing at it. I didn't mean to dodge your hypothetical, Your Honor. I apologize. Okay. Thank you. Mr. Kuhl, you've got two minutes here. Thank you, Your Honor. I have but a few brief points. First, on the issue of preemption, my friend stated that there was a conventional PDC that was designed around that. Evidence is not of record in this case. But what is relevant is that in Rapid Litigation Management v. Cells Direct, this Court found that evidence of a design around a significant evidence of a lack of preemption. Also, there was discussion about factual findings below and what were those factual findings and the nature of those and we would maintain I mean, the frustration here is that the claim seems to go beyond what you invented. That's really the heart of this dispute and whether it's a 101 problem or an A1 problem or an obviousness problem, but there does seem to be something here where you're claiming more than you invented. Respectfully, Your Honor, we would say that what is claimed here is very much what McRow recognizes is allowable as a matter of 101 and that is it's a genus. It covers a range of potential solutions. It ranges, in fact, in Table 1 if we refer to Table 1, which is APPX 103 and 104. These are the precise measurements from the inventive PDC. You can see that there's, for example, a disclosure of a diamond grain size of 20, but there's also another embodiment where it's 11. You can see how the impact flows through the other properties. We're not merely designing one PDC cutter for one purpose. In the art, we have PDC cutters which are tuned for different purposes. In fact, in this case, there were four different domestic industry products which had slightly varying properties, all of which fell within the claim limitations and all of which fell within the scope of the invention. I'm just curious if, hypothetically, we reverse the 101 and we reject the intervenor's alternative grounds for affirmance on enablement, what happens to this case? Does it need to be remanded for further proceedings? No, Your Honor. We believe that there would be no further proceedings because the petitioner prevailed on all other issues, and the issue of domestic industry was decided in our favor and the Commission declined to further opine on that, so we believe the only issue that remains here is this issue of Section 101. And there's no validity proceedings before the PTO? There are no validity proceedings. The claim was found novel, non-obvious, enabled, no lack of written description, and the only issue for the claims on appeal is Section 101. If there are no further questions... Thank you. Thank you, Your Honor. The case is submitted. I thank both counsel, all three counsel.